McNEIL CO. *v.* NIMICK & CO.    **187**

The J. C. McNeil Company, a Corporation of the State of Ohio, *v.* Alexander Nimick and James M. Bailey, trading as Phillips, Nimick & Company, Appellants.

*Contract—Written contract—Construction.*

Plaintiff sold and delivered a boiler to defendant, and guaranteed it to develop its rated horse power with a certain coal consumption. The guarantee then continued: " When using the waste heat from your heating furnace the boiler will develop not less than its rated horse power when the furnace is in good working condition." The evidence showed that the fire box of the boiler was immediately under it, but that the furnace from which the waste heat was to be obtained was about twenty-five feet from the boiler, and was connected with it by a neck which had in it a right angle. When the fires in the furnace were out, cold air would rush from the furnace through the neck to the boiler. This could have been obviated by the use of adjustable dampers in the neck. There was nothing in the contract which gave the plaintiff any control over the furnace and its connections, and certain erasures in the printed form of contract indicated an intention to exclude plaintiff from any meddling with the furnace. The defendants refused to pay for the boiler on the ground that it had failed to develop the horse power mentioned in the contract. *Held,* that the defendants were responsible for their heating furnaces, connections and dampers.

*Trial—Charge of court—Point.*

A point which involves a request to decide a question of fact by drawing a double inference is properly refused. Such a question should be left to the jury.

Argued Nov. 1, 1899. Appeal, No. 81, Oct. T., 1899, by defendants, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1897, No. 141, on verdict for plaintiff. Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Assumpsit on a contract. Before STOWE, P. J.

At the trial it appeared that the contract was as follows:

" We will erect this boiler complete in your mills, South Side, Pittsburgh, Pa., attach all fittings, and leave the same in working order, ready for pipe, AND FLUE connection.

" This boiler is guaranteed to develop its rated horse power with a consumption of one pound Pennsylvania coal, of good quality per ten pounds of water evaporated. One horse power

is equal to thirty pounds of water per hour. When using the waste heat from your heating furnace the boiler will develop not less than its rated horse power when the furnace (is) AND BRICK WORK in good (working) condition."

The words printed in caps were erased before it was signed, and the words in parentheses were inserted.

Other facts appear by the opinion of the Supreme Court.

Plaintiff's points and the answers thereto among others were as follows:

1. If the jury believe from the evidence that the plaintiff erected and installed in defendants' mills a 150 horse power Cook water boiler complete, with fittings attached, in working order, ready for pipe connections, had the same tested by the county inspector in defendants' mills under a water pressure of 150 pounds per square inch, and proved tight, had the test made provided for in the contract between parties upon which this suit rests, and found the boiler developed its rated horse power with a coal consumption of one pound Pennsylvania coal, good quality, per each ten pounds of water evaporated, and also when using waste heat from the furnace when the furnace was in good working condition, and that the defendants declined to accept said boiler, refused to make payment therefor in accordance with the terms of their contract, and notified the plaintiff to remove the same at once, then the plaintiff is entitled to recover. *Answer:* This point is affirmed, unless you find that the contract as written does not contain the actual agreement of the parties. So far as the actual agreement of the parties is concerned—and the only matter of controversy there seems to be the amount of horse power developed—if you believe all of those facts, and the development of horse power was as claimed by the plaintiffs, then under the written contract the plaintiffs are entitled to a verdict, and the only defense to that would be by having satisfied you by the evidence that the contract was such as they claim it to be, different from the written contract offered by the plaintiff in evidence. [1]

5. The plaintiff is only responsible for the erection and installation of the boiler in accordance with its contract, and the defendants were responsible for the proper construction of their heating furnace and connections, including the placing of necessary dampers. *Answer:* Affirmed. [2]

Defendants' third point and the answer thereto were as follows:

3. If the jury believe from the evidence that the test conducted by Mr. Johnson, to ascertain the capacity of the boiler when operated by waste heat from the heating furnace, was conducted with the stack of the heating furnace closed with a fire brick arch and the opening between the fire box and the boiler over the bridge wall of the same, through which flame and the products of combustion were conducted from the fire box of the boiler to the tubes of the boiler, when fired by direct coal, was obstructed by a wall of fire brick, and the closing of the heating furnace stack and the obstruction of the opening between the boiler and its fire box on its bridge wall, were essential to enable the boiler to develop the 170 horse power capacity, as testified to by Mr. Johnson, such a test under such conditions would not demonstrate that the boiler had a capacity of 150 horse power when operated by the waste heat from the heating furnace when tested in accordance with the contract sued upon in this case. *Answer:* Refused. This is a question of fact for the jury within the meaning of the parties at the time the contract was made. [3]

Verdict and judgment for plaintiff for $1,856.86. Defendants appealed.

*Errors assigned* among others were (1–3) above instructions, quoting them.

*A. M. Neeper*, for appellants.

*W. K. Jennings*, with him *H. G. Wasson*, for appellee.

OPINION BY MR. JUSTICE DEAN, December 30, 1899:

The plaintiff is a manufacturing corporation of Ohio, operating a steam boiler plant at Akron. Defendants are iron manufacturers operating mills in Pittsburg. On January 27, 1897, plaintiff contracted, for the consideration of $1,675, to install in defendants' mill one 150 horse power Cook water tube boiler. Accompanying the specifications and price was this written guarantee:

" We will erect this boiler complete in your mills, S. S. Pitts-

burg, Pa., attach all fittings and leave same in working order ready for pipe connections.

" This boiler is guaranteed to develop its rated H. P. with a coal consumption one (1) pound Pa. coal of good quality per each ten (10) pounds of water evaporated. One H. P. is equal to 30 lbs. of water per hour. When using the waste heat from your heating furnace the boiler will develop not less than its rated H. P. when the furnace is ~~and brick work~~ in good working condition."

The boiler was set up and tested, the makers declaring that it more than equaled the capacity stipulated; the defendants denied, that it had either come up to the terms of the written contract or to certain oral stipulations which induced the making of the contract, and averred that it had wholly failed to fulfil the obligations of either. They refused to pay for the boiler, and requested plaintiff to remove it. This it refused to do and brought this action in assumpsit for the price. The case came on for trial before STOWE, P. J. There was contradictory testimony as to there being any oral contract supplementary to the written one, also contradictory testimony as to the capacity of the boiler, and whether it came up to the specified test. The court submitted the testimony to the jury to find the facts. There was a verdict for plaintiff, and we have this appeal in which five errors are assigned. The first alleges error in the court's answer to plaintiff's first written point. This point, in substance, requested the court to charge the jury, that if plaintiff had performed to the letter all the stipulations of the written contract it was entitled to a verdict. The point was affirmed with the qualification that, if the written contract did not express the whole contract between the parties, then plaintiffs were bound to show that the boiler, when operated, had come up to the whole contract, oral and written. It will be noticed from the written contract that two sources of heat for making steam were in contemplation of both parties; one, by the combustion of coal in the fire box of the boiler, and the other, the waste heat from the iron heating furnace. From the coal burned in the fire box one pound to each ten pounds of water it was guaranteed would produce the steam requisite for 150 horse power. Nothing is said as to the degree of heat from the waste heat of the furnace that

will be necessary to raise the stipulated power from that source; the contract merely says that when using the waste heat from the heating furnace the boiler will develop not less than the rated power when the furnace is in good working condition. While from the contract there is a plain implication that the waste heat at times is to be used, there is nothing pointing to a duty on part of plaintiff to construct the arrangements necessary to its application. The furnaces, necessarily, being under control of defendants in an operation for other purposes than raising steam, and working independent of the boiler, the reasonable inference would be, that plaintiff was not responsible for the quantity supplied, or the proper method of supplying it. The fire box of the boiler was under it; the furnace from which the waste heat was to be obtained was about twenty-five feet from the boiler, and was connected with it by a neck which, by reason of the location of the boiler, had in it a right angle. In this arrangement it is obvious, that if the necessary degree of heat to make continuous steam power was to be kept up, some provision should be made to exclude the cold air which, when the heat was very low or the fires had gone out in the furnace, would rush from the furnace through the neck to the boiler. From the evidence the difficulty could have been obviated by properly placing adjustable dampers in the neck, to be closed and opened as the exigency required. The plaintiff claimed, that the contract did not require of it the perfecting of this waste heat arrangement, so as to raise the power to the contract degree; that its contract was performed when the direct firing from coal met the contract test; that the responsibility for heat from the furnace when required rested on defendants. The defendants offered evidence tending to show that at the time the written contract was offered for signature Mr. Bailey, one of the partners, who conducted the negotiations, said to plaintiff's agent, Mr. Kerr, that he did not understand building boilers, but if this contract furnished the same amount of steam as they were getting from three smaller boilers, and sufficient to run all their machinery as theretofore, and if heat from direct firing and waste heat from the furnaces could be used interchangeably for raising steam, then he would sign the contract, otherwise not; that Kerr replied that is just what it would do, and Bailey then

signed. Whether this evidence, under the circumstances was sufficient to enlarge or add to the written contract it is not necessary to discuss, for the jury found against defendant; therefore, the ruling of the court admitting the evidence did plaintiff no harm.

And further, in the answer complained of, as well as in the general charge, the court instructed the jury that if they believed there was such alteration or addition by parol to the contract as alleged, they should give full effect to it; that is if there was such parol addition, before they could find for plaintiff, they must find it had also come up to the altered contract. Taking what was said in the general charge, in connection with the answers to points, the court fairly left it to the jury to decide from the conflicting evidence just what was the whole contract, whether a written one exclusively, or partly written and partly verbal; if partly the latter, then just what were its terms, at the same time instructing them the burden was on plaintiff to show it had complied with both. And this is precisely the instructions asked by defendants in their first, second and sixth written points, which were affirmed by the court with no material qualification. The first assignment of error is overruled.

The second assignment is to the affirmation of plaintiff's fifth point, which asked the court to say to the jury, that defendants were responsible for the proper construction of their heating furnaces, connections and dampers. We think the answer was correct. The plaintiff had nothing to do with the heating furnace; the written contract gives it no authority to change or remodel any part of it; the contract as first drawn stipulated, that plaintiff would leave the work ready for pipe and flue connections; the words "and flue" are erased or scored showing that it was left without right to break the ovens even for the construction of flues; then the last line of the writing first reads "the boiler will develop not less than its rated horse power when the furnace is in good working condition," striking out or erasing with the pen the words "and brick work." There seems to have been a manifest intention to exclude plaintiff from any meddling with the furnace. Nor does the alleged parol contract embrace as part of plaintiff's duty the proper construction of the furnace, or connections, or dampers. We think the instruction prayed for was in accord with the undisputed testimony.

The third assignment complains of the refusal by the court of defendant's third point. This was a request to decide a question of fact by drawing a doubtful inference; it was properly refused and the question left to the jury.

The fourth and fifth assignments embrace substantially the same complaints as those in first and second, and for the same reasons are overruled. Appellants' complaints are really to findings of fact by the jury on sufficient evidence; over that error, if one there was, we have no power. On all the doubtful law in the case, the court below decided in favor of appellants.

The judgment is affirmed.